UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| ASHLEY McNABB, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 1:17-cv-00057-TAV-CHS |
| K-VA-T FOOD STORES, INC. d/b/a FOOD CITY, | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This civil case is before the Court on defendant's motion for summary judgment [Doc. 16] regarding plaintiff's claims under Title VII of the Civil Rights Act of 1964 for hostile work environment sexual harassment and retaliation [Doc. 1]. The Court has reviewed defendant's memorandum in support of its motion [Doc. 17], plaintiff's response in opposition [Doc. 20], and defendant's reply [Doc. 21]. For the reasons that follow, the Court will grant summary judgment for defendant on plaintiff's retaliation claim and deny summary judgment on plaintiff's sexual harassment claim.

**I. Background**

Plaintiff, Ashley McNabb, was a part-time employee for defendant, Food City, at its Harrison, Tennessee location. The incident that gave rise to this action occurred February 19, 2016 [Doc. 1]. While working in the bakery department, a co-employee, Samuel Fisher, "grazed against [plaintiff] from behind" on three separate occasions [Doc. 20-3 p. 24]. Shortly thereafter, Fisher approached plaintiff from behind, put his arms

around her neck, and choked her to the point where she could not breathe [*Id.* at 29]. After plaintiff told Fisher several times to stop, Fisher released plaintiff and immediately left to go on his break [*Id.*].

Following this incident, plaintiff called Assistant Manager Lisa Case Duncan on her cellphone since Duncan was not at work [*Id.* at 30–32]. Duncan called the manager of the bakery-deli department, Doris Adams, who also was not working but arrived at the store shortly after to speak with plaintiff [*Id.*]. It was during this time that the manager on duty, Keith Berberich, was notified of the incident and spoke with plaintiff as well [Doc. 20-1 p. 3]. Plaintiff described the incident to Berberich and Adams and asked them to watch the camera that caught the entire incident [*Id.*]. Berberich told plaintiff that he did not need to see the video and that he believed her [Doc. 20-3 p. 38]. Berberich sent plaintiff back to work since Fisher was on his break, instructed her to ignore Fisher if she saw him, and told her that he would speak to Fisher when he returned from his break [*Id.* at 39].

When Fisher returned from his break, he was not stopped from going back to the area where plaintiff was working [*Id.* at 41]. As a result, plaintiff called her fiancé, Oliver, who arrived at the store soon thereafter [*Id.*]. Because Fisher was still working in the same area as plaintiff, Oliver called the police [*Id.* at 44]. At this point, none of the managers involved with plaintiff's complaint had viewed the video; however, when police arrived, Berberich and the officers watched the video which showed a "clear assault" [*Id.* at 48]. Thereafter, Fisher was arrested and Berberich apologized to plaintiff after seeing how severe the incident was [*Id.*]. Afterward, Fisher was left on the schedule and was not

immediately terminated; instead, Fisher was terminated for being a "no call, no show" after not showing up for work for a few days after the incident [Doc. 20 p. 4].

Plaintiff contends that during this time period defendant did not properly investigate her claim or make any accommodations for her needs [*Id.* at 6]. Instead, plaintiff called the district manager three weeks later to ask why no one had talked to her about the assault [Doc. 20-3 pp. 59–60]. When someone was finally sent to speak with plaintiff, it was Karen Huskins, a risk management supervisor, who came and questioned plaintiff about the assault, her needs, and an allegation that plaintiff had sexually harassed another employee, Michael Johnson [*Id.* at 67–69]. This made plaintiff upset, uncomfortable, and even physically ill, especially since plaintiff alleges Huskins and other members of management knew Johnson's complaint to be false since Johnson was the boyfriend of Fisher's mother [Doc. 20 p. 8].

After the interview with Huskins, plaintiff continued to feel uncomfortable at work and continued to scale back her work schedule [Doc. 20-3 p. 78]. Plaintiff was assigned to do inventory alone with another male employee and had to stay in the bakery for a late shift while many male construction workers were present [*Id.* at 57, 82]. Plaintiff alleges that all of this led plaintiff to quit her job. After she quit, she filed a timely complaint with the Equal Employment Opportunity Commission [Doc. 1 ¶ 27] and subsequently brought this action alleging sexual harassment and retaliation. Defendant moved for summary judgment on both claims [Doc. 16]. Plaintiff responded [Doc. 20] and defendant replied [Doc. 21].

## II. Standard of Review

Federal Rule of Civil Procedure 56 instructs courts to grant summary judgment when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist, *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986), and all facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party presents evidence sufficient to support its motion, "the nonmoving party cannot rest on its pleadings but must come forward with specific evidence from the record to support its claim" to overcome an adverse summary judgment ruling. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence from which a reasonable trier of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For the genuine dispute to be material, it must involve facts that might affect the outcome of the suit under the governing substantive law. *Id.* The Court is not to weigh the evidence, judge the credibility of witnesses, or to determine the truth of the matter. *Id.* at 249. The Court's function is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 248.

**III. Analysis**

Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 for hostile work environment sexual harassment by a co-employee for which the defendant, her employer, is liable [Doc. 1]. In addition to this claim, plaintiff asserts she was retaliated against by defendant for engaging in the protected activity of making a complaint against Fisher [*Id.*]. The Court will analyze plaintiff's arguments in this order.

**A. Hostile Work Environment Sexual Harassment**

Title VII protects employees from a "workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A co-worker sexual harassment claim under Title VII requires a plaintiff to establish that (1) sexual harassment was unwelcomed; (2) the harassment was based on sex; (3) the harassing conduct was severe or pervasive; and (4) the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008).

In its memorandum in support of summary judgment, the defendant "concedes that [plaintiff] can establish the first three elements" [Doc. 17 p. 14]. However, defendant argues that plaintiff cannot establish that defendant did not take "prompt and appropriate corrective action" [*Id.*]. Defendant argues that it began investigating the incident within

fifteen minutes and was planning on speaking with Fisher; however, by this point, plaintiff had already called her boyfriend who called the police [*Id.* p. 16]. The following morning, management agreed that Fisher would not be allowed to return to work [*Id.* p. 17]. According to defendant, Food City management handled the situation within "about fourteen hours" from the time plaintiff reported the incident to the time management decided to terminate Fisher [*Id.*].

Defendant cites several cases in support of its conclusion that it acted promptly and appropriately. Courts have held that an employer responds appropriately when it starts an investigation immediately. *See, e.g., Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 371–72 (6th Cir. 2014) (finding that an employer acted appropriately when it immediately reassigned the assaulter and started an investigation); *Gregory v. Lowe's Home Cntrs.*, 3:15-cv-988, 2017 WL 2181552, at *8 (M.D. Tenn. May 18, 2017) (finding that an employer acted appropriately when it interviewed the victim the day after the complaint and fired the harasser less than three days later). In addition, in *Blackwell v. Heatec, Inc.*, this Court noted that "being made to work with a harasser in the midst of an investigation" is not sufficient to show that the defendant was indifferent or unreasonable. 1:11-cv-242, 2012 WL 6553278, at *4 (E.D. Tenn. Dec. 13, 2012); *see also Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749 (6th Cir. 2008) (refusing to impose liability on defendant employer for failing to separate employees "absent evidence of continued sexual harassment"). Thus, while the employer has a duty to investigate soon after a complaint is

made, the employer does not need to take immediate steps to terminate the accused employee or separate the accused from the victim.

In response, plaintiff argues that defendant failed to take prompt and appropriate corrective action [Doc. 20 p. 12]. Plaintiff points to the fact that she was forced to return to the same work area after the assault as well as the fact that defendant did not review the video or call the police [Doc. 20-1 ¶¶ 8–14]. Plaintiff also argues that keeping the assailant on the schedule and scheduling plaintiff to work late at night alone with construction workers was an inappropriate response [*Id.* ¶¶ 18–20]. Plaintiff argues that to the extent that defendant did investigate the matter, its interview with plaintiff about the incident was aggressive and "argumentative" [*Id.* ¶¶ 28–30].

Plaintiff notes that in *Smith v. Rock-Tenn Servs.*, the Sixth Circuit held that when a defendant failed to act for ten days after an assault by not separating the plaintiff from the assailant or launching an investigation, a reasonable jury could have concluded that the employer failed to act promptly or reasonably. 813 F.3d 298, 312 (6th Cir. 2016). Plaintiff argues that in the case before this Court, the assailant was left on the schedule for at least two weeks, and there was "no investigation or follow-up" for over three weeks [Doc. 20 p. 14]. Plaintiff further compares this to *Bradley v. Arwood*, where the Sixth Circuit found that an employer created a hostile work environment when it forced the plaintiff to continue to work with an individual who had racially harassed her. 705 F. App'x 411, 422 (6th Cir. 2017). Plaintiff argues that she was forced to continue to work in an environment that was traumatic for her given the assault [Doc. 20 p. 15].

For an employer to be liable for sexual harassment by a coworker, "its response [must] manifest indifference or unreasonableness in light of the facts the employer knew or should have known." *Hawkins*, 517 F.3d at 338 (citations omitted). For a response to rise to a level of indifference or unreasonableness, the employer's response "must indicate an attitude of permissiveness that amounts to discrimination." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005) (citations omitted). However, a "response is generally adequate . . . if it is 'reasonably calculated to end the harassment.'" *Hawkins*, 517 F.3d at 340 (quotiong *Jackson v. Quanex Corp.*, 191 F.3d 647, 663–64 (6th Cir. 1999)). While defendant is not required to separate an employee from her harasser during the investigation, *see Mullins*, 291 F. App'x at 749, an employer is required to start an investigation in a timely manner, *see, e.g., Smith*, 813 F.3d at 312; *Wierengo*, 580 F. App'x at 371–72; *Gregory*, 2017 WL 2181552, at *8.

Notwithstanding defendant's arguments, a reasonable jury could find that defendant failed to respond promptly or appropriately to plaintiff's complaint. While certain managers did arrive at the store shortly after the assault, defendant did not immediately view the security footage or call the police, and plaintiff was not interviewed about the incident for three weeks. Defendant did terminate the assailant; however, a reasonable jury could find that, in light of the nighttime assault at work, defendant failed to conduct a prompt or appropriate investigation. Specifically, a jury could find it unreasonable to return an employee back to her work station after reporting a sexual assault like the one at hand and failing to call the police immediately after being informed of the severity of the

incident. *Compare Wierengo*, 580 F. App'x at 371–72 (where the employer immediately reassigned the assailant and launched an investigation) and *Gregory*, at 2017 WL 2181552, at *8 (where the employer interviewed the victim the day after the complaint and fired the harasser less than three days later) *with Smith v. Rock-Tenn Servs.*, 813 F.3d at 312 (where the employer waited ten days to launch an investigation).

A reasonable jury could also find that defendant's failure to take the assailant off the schedule was not an appropriate response. Although courts have held an employer does not have to separate an employee from the accused, the facts here, where the accused choked the plaintiff to the point where she could not breathe, are distinguishable from cases involving verbal harassment. *See Hawkins*, 517 F.3d at 342 (highlighting that even separating the accused from the plaintiff is not always sufficient in and of itself to escape liability when the threatening behavior is of an extreme variety). The assault in this case was an isolated incident, which may be distinguishable from the relentless harassment in *Bradley;* however the nature of the harassment—physical assault—is a relevant factor when considering whether the response was appropriate. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998) (noting that the severity of harassment depends on the totality of circumstances and that "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances"). Because a reasonable jury could consider the "constellation of surrounding circumstances" and find that defendant failed to respond reasonably or appropriately, the Court will deny summary judgment on plaintiff's sexual harassment claim.

## B. Retaliation

In order to establish a retaliation claim under Title VII, a plaintiff must show: (1) she engaged in a protected activity; (2) the defendant knew of her exercise of a protected right; (3) the defendant took an adverse employment action against her; and (4) a causal connection between the protected activity and the adverse employment action exists. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013). The parties do not dispute the first two elements of this claim, as they agree plaintiff engaged in a protected activity by reporting her claim to her manager and the defendant knew of the exercise of the protected activity [Docs. 17 p. 18; 20 p. 16]. Therefore, this claim rests on whether plaintiff can establish that defendant took an adverse employment action against plaintiff, and whether there is a causal connection between the protected activity and the adverse employment action.

In support of its motion for summary judgment, defendant first argues that plaintiff did not suffer an adverse employment action because she was not constructively discharged [Doc. 17 p. 18]. To show constructive discharge, a plaintiff must show that (1) the employer deliberately created a work environment that would be intolerable to a reasonable person, (2) the employer intended to force plaintiff to quit, and (3) the plaintiff actually quit. *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012). Defendant articulates several factors for the Court to consider, including: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [male] supervisor; (6) badgering, harassment, or humiliation

by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *See Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005).

Defendant contrasts this case with *Savage*, where the Sixth Circuit acknowledged that while faculty members publically criticized plaintiff and boycotted the library of which he was head, this "rift" did not create such intolerable working conditions, in part because plaintiff still had the support of his supervisors. 665 F.3d at 739–740. Similarly, in *Regan v. Faurecia Automotive Seating, Inc.*, the Sixth Circuit noted that adjusting an individual's schedule by one hour did not create an intolerable working environment under the factors listed in *Saroli*. 679 F.3d 475, 482 (6th Cir. 2012). Defendant asserts that plaintiff was asked if she would be interested in a different position and that defendant was"persistent" in its efforts to get her to stay [Doc. 17-1 pp. 64, 79]. This, defendant argues, shows that it did not intend for her to quit. Defendant notes that plaintiff's pay and duties remained the same, and when she requested to work less, defendant attempted to accommodate her [*Id.* pp. 78–79].

Plaintiff argues that under *Smith v. LHC Group, Inc.*, the Sixth Circuit held that the intent requirement could be satisfied if it was reasonably foreseeable that the employee would quit as a result of the employer's actions. 727 F. App'x 100, 106 (6th Cir. 2018). Plaintiff asserts that the actions taken against her include:

> [S]cheduling her in uncomfortable situations with no accommodation upon request, ignoring her complaints, tormenting her in an interrogation with

> allegations against her that the employer knew to be false, and culminating in the final episode where she was assigned to work in the back of the store (away from customers) alone with just one other man, and when she asked to be moved due to her discomfort, her request was refused.

Doc. 20 p. 17]. Plaintiff argues that it was reasonably foreseeable that defendant's actions would force plaintiff to quit [*Id.*].

Plaintiff next argues that there was a causal connection between the protected activity and the constructive discharge. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 491–92 (6th Cir. 2010). Temporal proximity can play a role in establishing a causal connection. *Fuhr v. Hazel Park Sch. Dist.* 710 F.3d 668, 675 (6th Cir. 2013). In particular, if an "adverse action comes directly on the heels of the protected activity," then it can sometimes establish a causal connection for the purposes of meeting a plaintiff's prima facie case. *Montell v. Diversified Clinical Servs., Inc.* 757 F.3d 497, 506 (6th Cir. 2014) (noting that when an adverse action happens immediately after a protected activity, it is nearly impossible to provide other evidence). Plaintiff argues that even if defendant lacked the subjective intent to force plaintiff to quit, her quitting was a foreseeable consequence of the environment created by the employer immediately after her complaint [Doc. 20 p. 19].

Turning now to the question of whether plaintiff was constructively discharged, the Court must first determine whether a jury could find that the working conditions were intolerable such that a reasonable person would resign. The Court can consider several factors including, but not limited to, reduction in salary, badgering, harassment, or

humiliation by the employer calculated to encourage the employee's resignation. *Logan v. Denny's*, 259 F.3d 558, 569 (6th Cir. 2001); *see Saroli*, 405 F.3d at 451.

Plaintiff argues that the interview with Huskins was traumatizing and that defendant failed to accommodate her after the incident; however, these do not rise to the level of an intolerable working environment, and plaintiff fails to show that defendant acted with the objective intent to force her to quit. In *Saroli*, for example, the employer refused "numerous attempts" by plaintiff to figure out what maternity leave would be offered, he indicated his displeasure with her request, he reassigned many of plaintiff's duties to another employee with whom plaintiff had "unpleasant past interactions," and when plaintiff returned to work, all her work had been taken from her desk and she was locked out of her computer. 405 F.3d at 453. The Sixth Circuit held that considering the totality of the circumstances, a reasonable juror could find that the working conditions were intolerable. In comparison, the Sixth Circuit found in *Savage* that public criticism and a boycott were not sufficient to create intolerable working conditions. 665 F.3d at 739–40.

This case presents facts that are less severe than the facts in *Saroli* and *Savage*. Here, plaintiff argues that the interview with Huskins was "argumentative" and "traumatizing" because Huskins questioned her about an accusation that Huskins knew was not true. Even so, this isolated incident does not rise to the level of intolerable. Considering the interview with plaintiff's assertion that defendant failed to accommodate her requests, the Court likewise does not find facts sufficient to create an intolerable working environment. The Court first notes that defendant did attempt to accommodate plaintiff's

13

request to work fewer hours, and it was persistent in its attempts to get her to stay. When defendant refused to accommodate plaintiff's request not to stock shelves, plaintiff quit. It was not an ongoing refusal, but was a single event. In addition, stocking shelves was part of her normal job duties, and she was being asked to do it during normal work hours with an individual who was not her attacker. Considering the circumstances as a whole, the Court finds that this was not enough to create an intolerable working environment.

Even if the facts at issue did create an intolerable working environment, plaintiff's claim further fails in that there is no evidence of defendant's objective intent to force plaintiff to resign. In defendant's reply, defendant states that "the question of an employer's intent when determining whether a constructive discharge has occurred may be somewhat unsettled in the Sixth Circuit" [Doc. 21 p. 6]. While the *Smith* decision is new, the Sixth Circuit has previously held that "[i]ntent can be shown by demonstrating that quitting was a foreseeable consequence of the employer's actions." *Moore v. KUKA Welding Systems & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). The Court is asked to look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).

Again, considering all the circumstances in this case, there is not sufficient evidence of defendant's objective intent for plaintiff to quit. Plaintiff does not point to ongoing issues but primarily focuses on two isolated events: the interview with Huskins and the refusal to move her from stocking shelves. With regard to the interview, a reasonable juror could not find evidence of defendant's objective intent for plaintiff to quit. While Huskins asked plaintiff if she had sexually harassed another coworker and kept asking whether plaintiff had a lawyer, this all related to defendant's investigation. With regard to defendant's refusal to move her from stocking shelves, plaintiff's argument is essentially that by treating her normally, defendant intended for her to quit. In effect, plaintiff argues that an employer has a duty to accommodate in a situation involving sexual harassment and that treating an employee normally is evidence of intent that she would quit. The refusal to adjust her work duties on a particular night, however, is not sufficient to show that it was reasonably foreseeable that she would resign.

Viewing the evidence in the light most favorable to plaintiff, plaintiff has not established that the conditions were so intolerable that a reasonable person would have felt compelled to resign, that defendant intended her to resign, or that her resignation was a reasonably foreseeable consequence of defendant's actions. Therefore, the Court will grant defendant's motion for summary judgment in regard to plaintiff's claim of retaliation as plaintiff failed to establish any adverse employment action taken by defendant.

## IV. Conclusion

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** defendant's motion for summary judgment [Doc. 16]. The Court **GRANTS** summary judgment on plaintiff's retaliation claim and **DENIES** summary judgment on plaintiff's sexual harassment claim.

ENTER:

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE